# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| TINA TURNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 5:16-cv-02054-JHE |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Tina Turney ("Turney") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). (Doc. 1). Turney timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Turney filed her application for SSI on September 16, 2013, alleging she was unable to work. (Tr. 58). The Agency initially denied Turney's application (tr. 76-80), and Turney requested a hearing where she appeared on November 17, 2015 (tr. 35-57). After the hearing, the Administrative Law Judge ("ALJ") denied Turney's claim on December 15, 2015. (Tr. 13-28).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

Turney sought review by the Appeals Council, but it declined her request on October 20, 2016. (Tr. 1-3). On that date, the ALJ's decision became the final decision of the Commissioner. On December 21, 2016, Turney initiated this action. (*See* doc. 1).

Turney was forty-three years old at the time of the ALJ's decision. (Tr. 28, 40). She has a limited education (eleventh grade) and previously worked as a sewing machine operator, home assistant, cashier/checker, short order cook, and poultry team laborer. (Tr. 42, 53-54). Turney alleged disability based on high blood pressure, leg and feet swelling, diabetes, arm numbness, back pain, bipolar disorder, severe anxiety, restless leg syndrome, fibromyalgia, chronic asthma, insomnia, high cholesterol, severe arthritis, and severe acid reflux. (Tr. 194).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2]In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

>        by the [Commissioner];
> (4)    whether the claimant can perform his or her past work; and
> (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Turney had not engaged in substantial gainful activity since September 16, 2013, her application date. (Tr. 18). At Step Two, the ALJ found Turney has the following severe impairments: degenerative joint disease, arthritis, obesity, diabetes, depression, anxiety, borderline intellectual functioning, fibromyalgia, and history of cerebrovascular accident. (*Id.*). At Step Three, the ALJ found Turney did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-23).

Before proceeding to Step Four, the ALJ determined Turney's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Turney had the RFC to perform light work as defined

4

in 20 C.F.R. 404.1567(b), except she can frequently reach, handle, finger, and feel; occasionally balance, kneel, crouch, stoop, crawl, push/pull, with the upper and lower extremities, and climb ramps, the stairs; but never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme heat and cold, and vibration; and all exposure to dangerous machinery, unprotected heights, or work requiring walking on uneven or slippery surfaces. She can understand and remember short and simple instructions, but is unable to do so with detailed or complex instructions. She can do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks. She should have no more than occasional contact with the general public, but can deal with changes in the workplace, if introduced occasionally and gradually, and are well explained. She would miss no more than one day of work per month due to her impairments. (Tr. 23-26).

At Step Four, the ALJ determined Turney is unable to perform any past relevant work. (Tr. 26). At Step Five, the ALJ determined, based on Turney's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Turney could perform. (Tr. 26-27). Therefore, the ALJ determined Turney has not been under a disability and denied her claim. (Tr. 27-28).

### V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the

5

[Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Turney failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Turney challenges the Commissioner's decision on the following specific grounds, contending: (1) there is not sufficient medical evidence to support a decision as to Turney's disability (doc. 13 at 12-13); and (2) the ALJ erred in failing to consider her fibromyalgia at Step 3 of the sequential evaluation process (*id.* at 13-16). Neither of these grounds supports reversal.

**A. Substantial Evidence Supports the ALJ's Decision**

Substantial evidence supports the ALJ's RFC finding that Turney can perform light work with exertional and non-exertional limitations. (Tr. 23). As the ALJ noted, the evidence does not support Turney's allegations regarding her physical symptoms and limitations. (Tr. 24). The ALJ recognized Turney exhibited tenderness in her knees, but noted she was able to ambulate without an assistive device and heel and toe walk when she saw Dr. Crouch, an agency-ordered consultative examiner, for a medical exam on December 4, 2013. (Tr. 25, 742). Her deep tendon reflexes, strength, dexterity, and grip strength were all intact. (Tr. 742-44). Although she exhibited limited range of motion in the lumbar spine and hips, her range of motion was otherwise normal. (Tr. 743-44). Dr. Arnold, who performed an agency-ordered psychological consultative exam on December 6, 2013, noted Turney could stand without delay, but walked guarding her right foot. (Tr. 25, 747). She also noted Turney moved and gestured naturally with no overt indicators of pain or impairment. (Tr. 25, 747). These objective findings support the ALJ's physical RFC finding.

The objective evidence regarding Turney's mental impairments also substantially supports the ALJ's RFC finding. As the ALJ noted, Turney's mood was subdued with congruent affect during Dr. Arnold's psychological consultative exam. (Tr. 21, 747). Dr. Blotcky, who performed

a claimant-ordered psychological examine on February 4, 2014, acknowledged Turney's abstract reasoning was poor and her insight was limited and that she looked depressed. (Tr. 21, 757). However, Turney demonstrated intact memory, intact cognition, logical thought processes, and normal judgment. (Tr. 747, 757).

Dr. Blotcky's opinion further supports the ALJ's mental RFC finding. (Tr. 760-61). Based on the above objective findings, Dr. Blotcky opined Turney was only moderately limited in her ability to use judgment in simple, one-to-two-step, work-related decisions; understand, remember, and carry out simple, one-or-two-step instructions; maintain attention, concentration, or pace for periods of at least two hours, and maintain social functioning. (Tr. 760-61). A moderate limitation is one that affects but does not preclude the ability to function. (Tr. 760). Because these limitations are consistent with the record evidence, including Dr. Estock's[4] opinion as well as Dr. Arnold's and Dr. Blotcky's observations, the ALJ properly relied on this portion of Dr. Blotcky's opinion. *See* 20 C.F.R. § 416.927(c)(4). To accommodate Turney's limitations in dealing with stress, work changes, and difficulty interacting with the general public, the ALJ limited Turney to occasional contact with the public and found that changes needed to be infrequent and introduced gradually. (Tr. 23).

Turney's contention the ALJ should have further developed the record (doc. 13 at 12), is unavailing. The overall burden of proving "disability" lies with a claimant. *See* 20 C.F.R. § 416.912(c). The ALJ has a basic duty to fully and fairly develop the record, but he does not act as counsel. *See* generally *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (a case where claimant was not represented by counsel administratively). Here, Turney simply failed to present

---

[4] Dr. Robert Estock is the state agency psychiatrist who reviewed the record evidence on January 7, 2017. (Tr. 68).

evidence to support her claim.

Second, an ALJ is not obligated to order a consultative exam if the record contains sufficient evidence for the ALJ to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Wilson*, 179 F.3d at 1278; *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). A consultative examination is unnecessary to establish absolute certainty regarding a claimant's condition, as the Act requires only substantial evidence to support the ALJ's findings. *See Holladay*, 848 F.2d at 1210. Here, the record included three consultative examinations, two ordered by the agency and one ordered by Turney's attorney. (Tr. 742-44, 746-49, 756-61). The record does not contain other medical evidence, other than the consultative exams, but that is not because of the ALJ's development of the record. Rather, the reason for the lack of other medical evidence is that Turney did not receive treatment during the relevant period. Furthermore, it is unclear what Turney believes additional consultative examinations would show. The three consultative examinations provided the ALJ with sufficient information to make a decision, and he was not required to order additional consultative examinations.

## B. The ALJ Properly Evaluated Turney's Fibromyalgia

Turney also contends the ALJ erred in failing to consider her fibromyalgia at Step 3 of the sequential evaluation process. (Doc. 13 at 13-16). SSR 12–2p, which became effective on July 25, 2012, provides guidance for developing evidence to establish a claimant has a medically determinable impairment of fibromyalgia and for evaluating fibromyalgia in the context of a disability claim. *See* SSR 12–2p. This ruling clarifies that because fibromyalgia cannot itself meet a Listing (because it is not a listed impairment), at step three of the sequential evaluation, the ALJ must determine whether fibromyalgia medically equals a Listing, alone or in combination with other severe impairments. *See id.*

Notably, "it is not required that the [ALJ] mechanically recite the evidence leading to [his] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986). *See also Johnson v. Barnhart*, 148 Fed. Appx. 838, 842 (11th Cir.2005); *Keane v. Comm'r of Soc. Sec.*, 205 Fed. Appx. 748, 750 (11th Cir.2006); *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 Fed. Appx. 748, 750 (11th Cir.2011); *Kalishek v. Comm'r of Soc. Sec.*, 470 Fed. Appx. 868, 870 (11th Cir.2012). And, despite the specific guidance in SSR 12-2p, a determination that a claimant's impairments do not meet or equal a Listing may be ***implied*** from an ALJ's decision. *Hutchison*, 787 F.2d at 1463; *Johnson*, 148 Fed. Appx. at 842; *Keane*, 205 Fed. Appx. at 750; *Gray ex rel. Whymms*, 454 Fed. Appx. at 750; *Kalishek*, 470 Fed. Appx. at 870.

Even though a lack of objective evidence is considered a "hallmark" of fibromyalgia, *see Somogy v. Comm'r of Soc. Sec.*, 366 Fed. Appx. 56, 64 (11th Cir. 2010), a claimant must still produce evidence of functional limitations resulting from an impairment to prove it is disabling, *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (noting that the mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work). To this end, the ALJ found Turney's subjective complaints of disabling pain, resulting from fibromyalgia and other impairments, were not entirely credible. (Tr. 24-25). The ALJ noted that Turney did not seek or receive treatment for her physical or mental impairments during the relevant period and did not take prescribed pain medicine. (Tr. 24). Further, the ALJ noted Turney was able to carry on a conversation and answer questions during the hearing without any sign of discomfort. (*Id.*). *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1987) (stating an ALJ may consider a claimant's demeanor and appearance at an administrative hearing so long as the ALJ does not impose his observations in lieu of considering medical evidence). Additionally, Dr. Arnold noted that during her examination, Turney gestured and moved naturally with no overt indicators of pain

9

or impairment. (Tr. 747).

To the extent Turney argues the ALJ should have expressly evaluated whether her fibromyalgia medically equals Listing 14.09D (inflammatory arthritis), (doc. 13 at 13), the ALJ's finding that Turney did not have an impairment or combination of impairments that met or medically equaled a listed impairment is supported by substantial evidence. (Tr. 18). Listing level severity for 14.09D requires evidence of inflammatory arthritis involving various combinations and complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms. 20 C.F.R. pt. 404, subpt. P, app. 1, § 14.00D(6)(e)(ii). Additionally, Listing 14.09D requires a claimant to show repeated manifestations of inflammatory arthritis with at least two constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1) limitation in daily activities; (2) limitation in maintaining social functioning; or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *See id.* at § 14.09D.

The objective evidence from the relevant period does not establish the required findings for Listing 14.09D. It does not show repeated manifestations of inflammatory arthritis, severe fatigue, malaise, or involuntary weight loss. Further, the ALJ properly found Turney has only moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 21). Turney has not provided the necessary evidence to support the assertion that her fibromyalgia medically equals Listing 14.09D, and there is substantial evidence to support the ALJ's implicit finding that it does not.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record

and memoranda of the parties, the decision of the Commissioner of Social Security denying Turney's' claim for Supplemental Security Income is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 13th day of March, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE